# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00115-CR

**Dedra Lorine Reyes, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-04-476, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Dedra Lorine Reyes pleaded guilty to knowingly causing serious bodily injury to a child. *See* Tex. Penal Code Ann. § 22.04(a)(1), (e) (West Supp. 2008). The trial court accepted the plea and, after a three-day punishment hearing, adjudged appellant guilty and imposed a twenty-seven-year prison sentence. In five issues, appellant contends that the trial court erred by refusing her request to withdraw her guilty plea, permitting the State to suggest that appellant had injured a second child (her own daughter), excluding evidence regarding the state of the victim's parent's marriage, allowing the State to cross-examine appellant's mother regarding the contents of a psychological examination, and admitting in evidence a medical article on shaken-baby syndrome. We will affirm the conviction.

The injured child was Gabriella Morris. Gabriella was born on December 1, 2003, the fourth child of Jody and Felipa Morris. Gabriella had some health issues at birth due to Felipa's

gestational diabetes, but the evidence reflects that she was, generally speaking, a normal, healthy infant. In the spring of 2004, the Morrises arranged for appellant to babysit Gabriella two days a week. Appellant was herself the mother of a daughter, Serenity Cruz, born May 1, 2002.

Felipa left Gabriella with appellant on the morning of May 4, 2004, as she had been doing twice a week for about a month. That afternoon, emergency medical technicians were dispatched to appellant's residence in response to a report that a child was not breathing. They found Gabriella in distress. The child was first taken to the emergency room in San Marcos, then transferred to Children's Hospital in Austin. The medical testimony was that Gabriella had injuries commonly seen in shaken babies: bilateral retinal hemorrhages, subdural hematomas, and traumatic ischemic brain injury. Gabriella survived, but she was left with serious visual and developmental impairments for which she will need long-term medical, speech, and physical therapy.

Although appellant pleaded guilty, she testified at the punishment hearing that she did not shake or otherwise injure Gabriella. According to appellant, Gabriella was asleep when Felipa brought her that morning. Appellant said that this was unusual, that the child was usually awake when she arrived. According to appellant, Gabriella awoke at about 11:00 a.m. Appellant gave her a bottle, but she vomited and then fell back asleep. Appellant testified that when she next checked on Gabriella, the child "looked lifeless" and did not appear to be breathing.

### Guilty Plea

The State's original indictment alleged that appellant intentionally and knowingly caused serious bodily injury to Gabriella Morris "by violently shaking her." The indictment was later amended to allege that appellant knowingly caused Gabriella serious bodily injury by shaking

her with her hands, striking her with or against an unknown object, and failing to adequately supervise her. The amended indictment also alleged that appellant used her hands or an object unknown as a deadly weapon

On September 25, 2006, appellant appeared with counsel, waived her right to trial by jury, and entered an unbargained plea of guilty to the amended indictment. In response to questions from the court, appellant stated that she had no hesitation in pleading guilty and was doing so because she was, in fact, guilty. Appellant told the court that she understood that there was no plea bargain and that the range of punishment was five years to life in prison and a fine of up to $10,000. In addition, appellant signed a written document containing the admonishments required by statute. *See* Tex. Code Crim. Proc. Ann. art. 26.13 (West Supp. 2008). This document also contained a stipulation of evidence in which appellant admitted all of the conduct alleged in the amended indictment, including the use of a deadly weapon. The trial court accepted appellant's plea, found that the stipulated evidence substantiated her guilt, and took the case under advisement. The cause was reset for a bench trial on punishment.

Appellant subsequently employed new counsel, who filed a motion to withdraw appellant's guilty plea on November 14, 2006, the day before the punishment hearing was set to begin. The court heard arguments on the motion the following day. Appellant's new counsel asserted, as he had in the written motion, that when appellant pleaded guilty, she was confused as to whether or not there was a plea bargain. Counsel argued that appellant "gained nothing" by pleading guilty and "didn't understand" the consequences of her actions.

3

The court overruled the motion to withdraw the plea, but agreed to allow appellant to present further evidence in support of the motion during the punishment hearing. When appellant later testified, she said that she had been confused regarding the range of punishment. She testified that she had been told that the range was "five to life," but "when I arrived for my court date, I was told [by counsel] 20 to life. And so it changed dramatically for me." Appellant acknowledged that she had said that she understood the plea, but explained, "I just felt pressured. I didn't know what to do, I was confused."

A defendant may withdraw her guilty plea as a matter of right before judgment is pronounced or the case is taken under advisement. *Saldana v. State*, 150 S.W.3d 486, 490 (Tex. App.—Austin 2004, no pet.). But after the case has been taken under advisement, a defendant may withdraw her plea only with the trial court's permission, and the court's ruling denying permission will be overturned on appeal only if an abuse of discretion is shown. *Id.*

Appellant's assertion that she was confused regarding the applicable range of punishment or the existence of a plea bargain is contradicted by the record. The trial court admonished appellant both orally and in writing as to the applicable range of punishment, and appellant assured the court that she understood. She also told the court that she understood that there was no plea bargain.

When appellant appeared in court to plead guilty to a first-degree felony, she was twenty-two years old, the mother of a four-year-old child, and had no criminal record. We can appreciate the emotional strain appellant must have felt, and we can understand why she might later have entertained second thoughts about her decision. On this record, however, we find no basis

4

for concluding that the trial court abused its discretion by overruling appellant's motion to withdraw her guilty plea.

A large portion of appellant's brief to this Court is devoted to a summary of the evidence in a light favorable to the defense. She asserts that the trial court should have allowed her to withdraw her guilty plea because the "scientific and testimonial evidence raised considerable reasonable doubt" regarding her guilt.

At one time, it was the rule in Texas that a trial court was required to withdraw a defendant's guilty plea if evidence was introduced raising an issue as to her guilt. *See Moon v. State*, 572 S.W.2d 681, 682 (Tex. Crim. App. 1978) (op. on reh'g) (collecting cases). In *Moon*, the court of criminal appeals overruled that line of cases and held that if a defendant waives trial by jury and pleads guilty to the court, and if evidence is thereafter adduced raising a question as to the defendant's guilt, the trial court need not withdraw the guilty plea; rather, the court has the duty to consider the evidence and, if warranted, return a verdict of not guilty or guilty of a lesser included offense. *Id*. Under the holding in *Moon*, appellant's denial of guilt during the punishment hearing did not obligate the trial court to withdraw her guilty plea. If the trial court believed that there was a reasonable doubt as to whether appellant knowingly caused serious bodily injury to Gabriella Morris, it could have returned a verdict of not guilty or convicted appellant of a lesser-included offense. Appellant does not now contend that the evidence is legally or factually insufficient to sustain the judgment of conviction. Issue one is overruled.

5

*Injury to Other Child*

Appellant contends that the State committed "plain error" by suggesting that appellant had also injured her own daughter, Serenity Cruz. During its cross-examination of appellant and without objection, the State introduced a photograph of Serenity showing that her eyes are slightly crossed.[1] The prosecutor then cross-examined appellant regarding the fact that Serenity had suffered from colic, again without objection. Finally, the prosecutor asked appellant if she were aware that colic "is one of the mild symptoms of shaken baby syndrome." The prosecutor added, "It's pretty coincidental that she's diagnosed with colic and has a crossed eye, wouldn't you agree." Once again, there was no objection to these questions.

Appellant complains that the State's suggestion that she had shaken Serenity was inflammatory and without evidentiary basis. Because appellant voiced no objection, however, nothing was preserved for review. Tex. R. App. P. 33.1(a)(1). Issue two is overruled.

*Morrises' Marriage*

While cross-examining Jody Morris, defense counsel adduced the fact that the witness and Felipa Morris were not living together at the time Gabriella was injured. When counsel asked Jody if Felipa was "contemplating divorce because of a Diana Garza," the prosecutor objected that the question was irrelevant. Defense counsel responded that the State had opened the door by "paint[ing] a picture of a happy family." The court told counsel, "You've already made the point that they were at least in the process of being separated and that there may have been some

---

[1] A pediatric ophthalmologist had previously testified that Gabriella Morris had crossed eyes, "which is likely related to the fact that she had poor vision in the eyes due to her injuries."

contemplation by some of the parties concerning divorce. I think leave it at that." Counsel then asked if he "[could] follow up on the separation as to just a separation issue, that they weren't living together and who was watching the baby and things of that nature." The court replied, "The objection concerning relevance is sustained."

Appellant argues that the Morrises' separation and possible divorce was relevant as a basis for believing that there was "frustration within the immediate family [as] a plausible counter-explanation" for Gabriella's injuries. But as the trial court pointed out to counsel, the defense had already adduced the fact that Jody and Felipa were not living together and were contemplating divorce. The trial court subsequently permitted defense counsel to question both Jody and Felipa Morris regarding the persons who had been at home with Gabriella on the night of May 3, 2004. The trial court did not prevent appellant from adducing evidence relevant to her "counter-explanation." No abuse of discretion is shown. Issue three is overruled.

### *Psychological Report*

One of the defense witnesses at the punishment hearing was appellant's mother, Mirta Reyes. She described appellant as "a very, very, sweet, loving person. [Appellant] has no intention of hurting nobody. She has never hurt anybody." Reyes agreed that appellant was "a passive person" and indicated that she had never seen appellant "in any type of aggressive mode." She testified that on the afternoon in question, she and appellant had followed Gabriella to the hospitals. Reyes testified that appellant was "crying," "very upset," and "scared." She also testified, "Every day we pray. We pray for the little child that she gets better."

7

While cross-examining Reyes, the prosecutor asked if she knew that appellant "was evaluated psychologically by Dr. Barnes."[2] Reyes said that she knew this. She also acknowledged knowing what the report said "about [appellant's] personality." At this point, defense counsel objected that the prosecutor was "trying to inject evidence that has not been proffered to the Court by asking her questions of a report that is clearly hearsay." The objection was overruled. In response to further questions by the prosecutor, Reyes testified that the report "basically, to me it made it seem like [appellant] was a monster of some sort. If I can recall, it said that [appellant] was the type of person that would get mad over anything that they would tell her." Asked if the report characterized appellant as "explosive," Reyes replied, "Ma'am, she does not become explosive."

On appeal, appellant urges that her hearsay objection should have been sustained. The record reflects, however, that the State was using Reyes's knowledge of the psychological report to impeach her testimony that appellant was a "sweet, loving person" who "never hurt anybody," and not to prove the truth of the matters asserted in the report. *See* Tex. R. Evid. 801(d) (defining hearsay). Whether this was proper impeachment is an issue that is not before us. The trial court did not err by overruling the hearsay objection. Issue four is overruled.

### *Medical Article*

One of the State's witnesses was Dr. George Edwards, a pediatrician with expertise in the field of traumatic injuries to children, including shaken-baby syndrome, and one of the physicians at Children's Hospital who treated Gabriella Morris on May 4, 2002. During the course

---

[2] Aside from this cross-examination, the record is silent regarding this evaluation. Dr. Barnes is not identified, and his alleged report is not in the record.

of Edwards's testimony, the prosecutor drew his attention to a "policy statement" or article by the Committee on Child Abuse and Neglect of the American Academy of Pediatrics entitled *Shaken Baby Syndrome: Rotational Cranial Injuries—Technical Report* which had been published in the July 2001 issue of the journal Pediatrics. More than once during his testimony, Edwards stated that an opinion he expressed was consistent with this article. After Edwards indicated that the article was one that is normally relied upon by experts in the field, the State offered a copy of the article in evidence. As authority, the prosecutor cited evidence rule 703, which provides that the facts or data on which an expert bases an opinion need not be admissible in evidence if they are of a type reasonably relied upon by experts in the particular field. Tex. R. Evid. 703. In response to voir dire questions by defense counsel, Edwards said that he could not remember the last time he had read this article, but "[i]t's been a while." Appellant then objected to the admission of the article because it had not formed a basis for Edwards's testimony and had not been provided to the defense during discovery.

Initially, the trial court expressed the view that although the State had established that the article was a reliable authority under rule 703, the article remained hearsay and under rule 803(18), pertinent statements from the article could be read into evidence but could not be received as exhibits. Tex. R. Evid. 803(18). This analysis was correct. Rule 703 permits an expert, under certain circumstances, to base an opinion on inadmissible facts or data; the rule does not permit the admission into evidence of the inadmissible facts or data. Under rule 803(18), statements contained in a learned treatise may be read into evidence but not be received as an exhibit.

Nevertheless, the court took the question under advisement and later, after Edwards's testimony was concluded, overruled appellant's objections and admitted the article as State's exhibit 13.

Appellant now contends that the journal article was inadmissible under rule 803(18). This is not the contention he made below, where he objected that the article was not reliable, had not been relied on by the expert witness, and had not been disclosed during discovery. *See* Tex. R. App. P. 33.1(a)(1). We also believe that any error in the admission was harmless. *See* Tex. R. App. P. 44.2(b). The article contains two statements that appellant asserts were harmful to the defense. First, the article states that mild cases of shaken-baby syndrome may be mistaken for a viral illness, feeding dysfunction, or colic. Appellant argues that the State relied on this to suggest that she had shaken her own daughter. As we previously noted, however, appellant did not object when this suggestion was made. Second, the article states that the clinical signs of shaken-baby syndrome are immediate and identifiable. Appellant argues that this undermined her defensive theory that Gabriella's injuries had been inflicted before she was left in appellant's care. Edwards testified, however, that the symptoms of Gabriella's injuries would have "started very rapidly after the injury was sustained" and that his opinion was consistent with the opinions contained in the journal article. Under the circumstances, we think it unlikely that the admission of the article itself added any significant weight to the doctor's expert testimony in the eyes of the trial court.

Appellant had pleaded guilty and judicially confessed. Although appellant denied her guilt during the punishment proceeding, she does not contend that the evidence is insufficient to sustain her conviction. Under the circumstances, the admission of the journal article did not affect appellant's substantial rights. Issue five is overruled.

10

The judgment of conviction is affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed:  October 16, 2008

Do Not Publish